[726 NYS2d 474]

In the Matter of the Arbitration between RICHARD C. BERN-STEIN, Appellant, and NORWICH CITY SCHOOL DISTRICT BOARD OF EDUCATION, Respondent.

Third Department, May 10, 2001

APPEARANCES OF COUNSEL

*Janet Axelrod, NEA/New York,* Albany (*Paul D. Clayton* of counsel), for appellant.

*Ferrara, Fiorenza, Larrison, Barrett & Reitz, P. C.,* East Syracuse (*Craig M. Atlas* of counsel), for respondent.

## OPINION OF THE COURT

PETERS, J.

In May 1998, petitioner, a tenured English teacher in the Norwich High School located within the Norwich City School District (hereinafter District), was charged by respondent with conduct unbecoming a teacher, insubordination, neglect of duty and incompetence for using inappropriate verbiage during the course of a lesson. A hearing was held during January and March 1999. At the hearing, four students from petitioner's eleventh grade English honors class testified that in the beginning of the 1997-1998 school year, petitioner used the words "penis" and "clitoris" when explaining a literary technique. Principal James Walters testified that he was notified of the incident by a teacher and a parent of a child in petitioner's class. Upon the suggestion of the Superintendent of the District, he spoke with some of petitioner's students and acquired statements from them. Walters later met with petitioner who admitted to using these words in a discussion during the second or third day of class when introducing the topic of "phallogocentrism," a theory of feminist literary criticism involving phallic symbolism, as a background to understanding and interpreting literature. Petitioner believed that he used these terms in response to a question by a student about the meaning of the word "phallic."

Walters recounted that he had previously notified petitioner of his concerns. Using petitioner's 1994-1995 end of year evaluation which was admitted at the hearing, Walters detailed several incidents which illustrated petitioner's undue emphasis upon sexual imagery in his selected readings, classroom discussions and writing assignments. Complaints received from students included petitioner's tendency to compare them to characters from the books that they were reading in class whose sexual proclivities he had discussed. His evaluation further noted an incident whereby petitioner, in charge of the school's literary magazine, authorized its distribution notwithstanding its inclusion of a student piece entitled "Slut," a description of a young girl's sexual encounter. Concern regarding his emphasis upon sexual imagery was exemplified by his as-

signment to students to write upon such topics as "sex—what you really want out of it." The evaluation concluded with the following direction: "de-emphasize sexual aspects of the literary works that you deal with in your classroom. This concern has been voiced loud and clear during the course of the 1994-95 school year by parents and students. I will anticipate a different focus in your discussions during the 1995-96 school year."

Record evidence reveals that at the beginning of the 1995-1996 school year, Walters informed petitioner that his reading lists had to be approved prior to use in the classroom. Walters' initial review found several of petitioner's choices to be inappropriate either because of their sexual connotations or because of an undue emphasis on gender issues; he advised petitioner that "[t]here needs to be greater emphasis on literature for literature's sake and less post structuralist emphasis on the politics of literature. In addition, reading materials need to be more 'age appropriate.'" In the following school year, Walters again forbade petitioner from using a certain book due to its sexual nature. Walters finally testified that although petitioner had tremendous ability as a teacher, he was concerned about his judgment with this age group.

In November 1995, petitioner entered into a settlement agreement which resolved disciplinary charges brought against him pursuant to Education Law § 3020-a stemming from the student literary magazine debacle that occurred during the 1994-1995 school year. The agreement provided, *inter alia*, that petitioner would not utilize any reading materials which were not approved in accordance with existing District policy; would not utilize controversial materials without first having the material reviewed by Walters; and would carefully monitor, edit and review for content all of his students' projects which would be distributed throughout the school or to the general public. It further acknowledged that such agreement would be sealed and used only if a similar event arose; its use then would be limited to "showing that [petitioner] received notice that certain actions were contrary to District policy and that a disciplinary penalty was levied for such violations."

At the instant hearing, petitioner remained steadfast in his testimony that he did not violate the settlement agreement by introducing the theory of phallogocentrism because he, and others, have historically taught this theory without incident to this age group and never intended to have these literary themes viewed in a sexual manner. David Paul, a former department chair and teacher of eleventh and twelfth grade

honors programs in the District, testified in support of petitioner. Further explaining the theory behind phallogocentrism and its use in a program sponsored by Syracuse University with the twelfth grade English honors students, Paul testified that he did not find the use of these controversial terms inappropriate for this grouping. This testimony was in direct contrast to that of Eva Jones, also a former chair of the department and teacher of the eleventh grade Regents English and twelfth grade honors students for the District; she testified that while she taught this literary theory later in the school year after students were exposed to numerous literary concepts, she never found it necessary to use such sexually explicit terms.

The Hearing Officer concluded that while the evidence and testimony did not support a finding on each of the specifications charged, a preponderance of the credible evidence did support the charge of conduct unbecoming a teacher and insubordination. Concerning insubordination, the Hearing Officer noted that petitioner had been warned both orally and in writing by Walters that he should deemphasize the sexual aspects of literary works and be cautious about classroom discussions that have sexual overtones. Although the use of these two words in a vacuum may well not have intended to lead to a discussion of sexual matters, the Hearing Officer opined that their use by petitioner constituted poor judgment in light of his history with respondent. The Hearing Officer did not find that petitioner violated the settlement agreement. Petitioner was fined $3,000 and received a letter of reprimand.

On appeal, Supreme Court confirmed the Hearing Officer's determination but found that it was error to impose both a letter of reprimand and a fine. It ordered a rehearing limited to the issue of penalty. For that reason, petitioner solely appeals the substantive charges sustained.

Education Law § 3020-a (5) requires a court to review the Hearing Officer's determination pursuant to CPLR 7511. The grounds for vacating an award thereunder include, *inter alia*, misconduct, abuse of power, or procedural defects (*see*, CPLR 7511 [b] [1] [i], [iii], [iv]; *see also*, *Austin v Board of Educ.*, 280 AD2d 365). Yet, where, as here, the parties are forced to engage in compulsory arbitration, judicial review under CPLR article 75 requires that the "award be in accord with due process and supported by adequate evidence in the record" (*Motor Vehicle Mfrs. Assn. v State of New York*, 75 NY2d 175, 186; *see*, *Matter of Elmore v Plainview-Old Bethpage Cent. School Dist., Bd. of*

*Educ.*, 273 AD2d 307). Applying this standard, we agree with Supreme Court that there was no basis for vacating the determination.

In ruling upon the charges of conduct unbecoming a teacher and insubordination, the Hearing Officer credited the testimony of Walters regarding the complaints that he received from parents in the community, the extensive history between petitioner and the District, and the notice provided to petitioner concerning his need to deemphasize the sexual aspects of the literary works that he introduced in the classroom. Petitioner, at all times, acknowledged the parameters imposed upon his teaching. Although he posited an alternative explanation for his use of the challenged words, he did not deny their use or the timing of his introduction of this concept. In our view, the cumulative testimony provided the requisite quantum of evidence to support the charges sustained (*see, Motor Vehicle Mfrs. Assn. v State of New York, supra*, at 186). The fact that petitioner was found guilty of fewer than all of the specifications alleged is of no merit in challenging the determination rendered (*see, Appeal of Grihin*, 38 Ed Dept Rep 399, 415-417).

Nor do we find merit in petitioner's contention that his academic freedom must be protected because the information that he was presenting has material educational value. As we have previously reasoned, "notwithstanding teachers' rights to choose methodology under principles of academic freedom * * *, school officials 'must be permitted "to establish and apply their curriculum in such a way as to transmit community values" ' * * * providing their discretion is 'exercised in a manner that comports with the transcendent imperatives of the First Amendment' " (*Matter of O'Connor v Sobol*, 173 AD2d 74, 78, *appeal dismissed* 80 NY2d 897, quoting *Board of Educ. v Pico*, 457 US 853, 864 [citations omitted]; *see, Ware v Valley Stream High School Dist.*, 75 NY2d 114, 122). With petitioner having been previously warned of Walters' concern regarding the sexual content and age appropriateness of the material that he was presenting and aware that his prior choice of materials offended community values, we can find no basis upon which we would disturb the determination rendered.

CREW III, J. P., MUGGLIN, ROSE and LAHTINEN, JJ., concur.

Ordered that the order is affirmed, with costs.