■ In the Matter of the Arbitration between CHRISTOPHER B. CARROLL, Appellant, and MARILYN PIRKLE, as Superintendent of Schools of the Rondout Valley Central School District, et al., Respondents. [745 NYS2d 271] —Cardona, P.J. Appeal from a judgment of the Supreme Court (Teresi, J.), entered March 12, 2001 in Albany County, which denied petitioner's application pursuant to CPLR 7511 to vacate an arbitration award.

Petitioner was a tenured guidance counselor in the Rondout Valley Central School District in Ulster County (hereinafter the District), employed by the District for 19 years. In the fall of 1994, he was assigned guidance responsibilities for the incoming high school class of 1998. Those responsibilities included, inter alia, working with the students to develop individualized academic plans, scheduling students' courses during the spring for the following year, reviewing student report cards in June to make sure they passed everything, changing the academic plan if a student failed a course and conducting annual reviews of the students' records in the fall. After several students failed to graduate with their class in June 1998, respondent Board of Education of the Rondout Valley Central School District (hereinafter the Board) brought disciplinary charges against petitioner pursuant to Education Law § 3020-a alleging that he failed to maintain required records (charge I), failed to arrange required remedial assistance for students who failed a Regents Competency Test (hereinafter RCT)[1] (charges II-A, II-C, II-E and II-J), failed to schedule students for required courses (charges II-D, II-F, II-G, II-H and II-J),[2] and falsified a student record (charge III).

Following a hearing, petitioner was found not guilty of charges I, II-G and II-J, but guilty of the remaining charges. The Hearing Panel recommended termination. On December 28, 2000, the Board terminated petitioner. Petitioner commenced the instant proceeding in January 2001 pursuant to Education Law § 3020-a (5) and CPLR 7511 to vacate the Hearing Panel's decision. Supreme Court denied the petition after determining that the Hearing Panel did not exceed its powers as arbitrators nor execute its powers imperfectly, resulting in this appeal (see, CPLR 7511 [b] [1] [iii]).

1. Regents Competency Tests represent the minimum testing requirements for graduation in New York.

2. The Board withdrew charges II-B and II-I involving two students who were allegedly not scheduled for a required class.

Petitioner's first argument is that Supreme Court erred when it employed too narrow a standard of review under CPLR 7511 in determining whether to set aside the Hearing Panel's decision. Education Law § 3020-a (5) provides that "[t]he court's review shall be limited to the grounds set forth in [CPLR 7511]." "The grounds for vacating an award thereunder include, *inter alia*, misconduct, abuse of power, or procedural defects * * *" (*Matter of Bernstein [Norwich City School Dist. Bd. of Educ.]*, 282 AD2d 70, 73, *lv denied* 96 NY2d 937 [citations omitted]; *see*, CPLR 7511 [b] [1] [i], [iii], [iv]). However, "where, as here, the parties are forced to engage in compulsory arbitration, judicial review under CPLR article 75 requires that the 'award be in accord with due process and supported by adequate evidence in the record' " (*Matter of Bernstein [Norwich City School Dist. Bd. of Educ.]*, *supra* at 73, quoting *Motor Veh. Mfrs. Assn. v State of New York*, 75 NY2d 175, 186; *see*, *Mount St. Mary's Hosp. v Catherwood*, 26 NY2d 493, 508). Therefore, that standard will guide our review, which we begin by first examining whether the determination made by the Hearing Panel was, on the entire record, supported by substantial evidence (*see*, *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 179-180; *Matter of Pell v Board of Educ.*, 34 NY2d 222, 231; *Matter of Hoffman v Village of Sidney*, 235 AD2d 698, 700; *see also*, CPLR 7803 [4]). In other words, we must determine " 'whether there is a rational basis in [the whole record] for the findings of fact supporting the [Hearing Panel's recommendation]' " (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, *supra* at 182, quoting McCormick, Evidence § 352, at 847 [2d ed]).

Petitioner was charged with violating Education Department regulations and District policies by failing to arrange remediation for students one, two and three who failed the RCT in Global Studies (charges II-A, II-C and II-E). Each of the students testified that they failed the RCT on several occasions beginning in June 1996 and asked petitioner for remediation throughout their high school careers. Under the Education Department regulations in effect at that time, students who failed an RCT and their parents or guardians were required to be notified of the test results and the plan for remediation. The students were to be provided with remedial instruction designed to enable them to pass the test, which was required to begin no later than the semester immediately following the semester in which the test was administered (*see*, 8 NYCRR 100.5 [a] [4] [v] [Sept. 30, 1996]). Additionally, both Doreen Sangaline, a guidance counselor, and petitioner testified that a student must be placed in a remediation class despite schedul-

ing conflicts unless a parent consents in writing to have the student exempted from the class. Since the evidence shows that the three students were not enrolled in remediation classes in the semesters after they failed their RCTs and since there is no proof that petitioner obtained the required written consents, there is a rational basis supporting the Hearing Panel's finding of guilt on these charges.

Petitioner was charged and found guilty of failing to ensure that two students completed English 11 so they could graduate with their class in June 1998 (charges II-D and II-F). There was undisputed evidence that student four failed English 10 in his sophomore year, took it again and passed it in his junior year, and was scheduled for and completed English 12 in his senior year despite the fact that he was never scheduled for nor did he complete English 11. As a result, two days before graduation he learned he could not graduate. Petitioner acknowledged that, as a guidance counselor, he was responsible for making sure that a student met all graduation requirements. Thus, there was a rational basis for sustaining charge II-D.

We reach a different conclusion with respect to student five, who petitioner allegedly permitted to withdraw from a repeat English 11 class before he attended sufficient classes to obtain credit for the course (charge II-F). The evidence showed that student five was enrolled in Regents English 11 for his entire junior year, but failed it and the English 11 Regents exam. He was reassigned to take English 11 in his senior year, but withdrew after the first quarter in October with petitioner's assistance. Student five testified that he wanted to take the English 11 Regents exam again in January 1998 without having to sit through the course and still earn credit. This would have been possible pursuant to the District's written policy, which provided that if he passed that next Regents exam with a score of 85, he would receive credit for the course. His only other option to receive credit would have been to pass the first two quarters and score a 65 or better on the Regents examination. Student five took the English 11 Regents examination in January 1998 and passed it, though apparently scoring below 85. Since he had withdrawn from the course in October before completing two quarters, he did not receive credit for the course. Notably, William Cafiero, the principal, testified that the only way for student five to get credit for the repeated course was for him to maintain a 75 average in the course for one semester and pass the RCT or Regents examination. Sangaline indicated that a student might be al-

lowed to repeat a course through independent study or some other means. Since the District's policy would have permitted student five to receive credit for the repeated course by scoring 85 on the Regents examination, and considering the testimonial variants, we find insufficient evidence in the record to support the finding that petitioner was guilty of misconduct for having allowed student five to withdraw from the course before he completed two quarters. Accordingly, that finding is reversed.

We next find a rational basis in the record to support the finding that petitioner was guilty of neglect of duty for failing to schedule student six for sufficient physical education credits to graduate (charge II-H). She needed .25 credits or one more quarter to graduate. Her student records indicated that she was not scheduled for the additional physical education credits in her senior year after she failed physical education during her junior year. Petitioner's claim that the physical education instructor's records were inaccurate and that the student had a medical excuse for the relevant quarter were unproven. Therefore, there is substantial evidence in this record establishing that petitioner failed to ensure that student six had the requisite physical education credits for graduation.

Turning to petitioner's next contention, he asserts that there was insufficient evidence to support the finding that he was guilty of misconduct for falsifying a student's "plan card" to indicate that the student had passed a course during the 1997-1998 school year that the student never took (charge III). We disagree. School records showed that student seven was required to repeat Global Studies 9 in his sophomore year and had never been scheduled to take Global Studies 10. Petitioner admitted that he assigned one credit on student seven's plan card for Global Studies 10, but maintained that the notation was a projection of the credit the student would earn if he were to take and pass the course. He averred that the card was just a planning tool. However, the high school guidance secretary, Deborah Gottsteine, testified that the student plan card is considered a permanent record that lists all of the grades and classes that a student has taken and is used to prepare a student's transcript. She also testified that she would have interpreted the notations "SS 10 65 Avg. 1.00 credits" on the card as meaning that student seven passed Global Studies 10. Additional testimony from Louis Quick, a social studies teacher, indicated that he and petitioner had discussed how student seven could receive credit for the course without actually taking it. That testimony provides additional support for the finding that the notations amounted to a falsification of student seven's guidance record.

Petitioner next alleges two due process violations that merit discussion. The first allegedly occurred when the Hearing Panel found him guilty of conduct not set forth in the charges and specifications. The second occurred when the Hearing Panel failed to consider the District's lack of remediation and peer intervention in assessing the penalty imposed. Addressing the former, petitioner argues that he was never charged with intentionally falsifying records. However, under charge III it was alleged that petitioner was guilty of misconduct for marking a student's plan card to indicate that he had passed Global Studies 10 without having taken the course. In our view, that charge adequately apprised petitioner that the alleged misconduct amounted to intentionally falsifying the student's record.

Addressing the second due process violation, petitioner alleges that the Hearing Panel did not comply with the requirements of Education Law § 3020-a (4) when it recommended the penalty because it failed to consider the Board's lack of effort to correct his behavior. Education Law § 3020-a (4) (a) provides, in relevant part, as follows: "At the request of the employee, in determining what, if any, penalty or other action shall be imposed, the hearing officer *shall* consider the extent to which the employing board made efforts towards correcting the behavior of the employee which resulted in charges being brought under this section through means including but not limited to: remediation, peer intervention or an employee assistance plan" (emphasis supplied). Here, although petitioner requested that the Hearing Panel consider the lack of any remediation by the Board, the record does not reflect that such consideration was given. Therefore, we must vacate the Hearing Panel's recommendation and remit the matter for reimposition of a penalty. Accordingly, we do not reach the issue of whether the penalty imposed was appropriate.

Mercure, Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as denied the application to vacate charge II-F of the arbitration award; application granted to that extent, award vacated as to said charge, penalty vacated and matter remitted to the Hearing Panel for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.