Matter of Moms for Liberty of Wayne County v State of New York State Educ. Dept. (2025 NY Slip Op 25098)

[*1]

Matter of Moms for Liberty of Wayne County v State of New York State Educ. Dept.

2025 NY Slip Op 25098

Decided on April 18, 2025

Supreme Court, Albany County

Hartman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on April 18, 2025
Supreme Court, Albany County

In the Matter of the Application of Moms for Liberty of Wayne County and Reverend Jacob Marchitell, Petitioners,

against
State of New York State Education Department; Board of Education of Clyde-Savannah Central School District, Respondent(s) and Emilie Bastion, Intervenor-Respondent.

Index No. 910036-24

Pierson Ferdinand LLP
Aurora Cassirer, Esq.
Attorneys for Petitioners
1270 Avenue of the Americas
7th Floor1050
New York, New York 10020
Nathan J. Moelker, Esq.
Attorney for Petitioners Pro Hac Vice
201 Maryland Avenue, NE 
Washington, D.C. 20002
Letitia A. James
Attorney General of the State of New York
Noah C. Englehart, Assistant Attorney General
Attorneys for Respondent 
New York State Education Department
The Capitol Albany, New York 12224-0341
Ferrara Fiorenza PC
Charles E. Symons, Esq.
Attorney for Respondent Board of Education
of Clyde-Savannah Central School District
5010 Campuswood Drive 
East Syracuse, New York 13057
New York State United Teachers
Christina M. French, Esq. 
Jennifer N. Coffey, Esq. 
Attorneys Intervenor-Respondent
Emilie Bastian 
800 Troy-Schenectady Road
Latham, NY 12110-2455

Denise A. Hartman, J.

In this CPLR article 78 proceeding, petitioners Moms for Liberty of Wayne County [FN1]
and Reverend Jacob Marchitell challenge a decision of respondent State of New York State Education Department (SED or Commissioner), dated April 25, 2024, which upheld the September 2023 determination of the Board of Education of Clyde-Savannah Central School District (School Board) to retain over their objection five books in the junior and senior high school library. By decision and order dated March 17, 2025, this Court granted the motion of Emilie Bastion, the School District's library media specialist, to intervene as a respondent in this matter. And by decision and order dated March 5, 2025, the Court granted the motion of the New York Civil Liberties Union to file an amicus brief.
Issue has now been joined by all parties. Respondent SED and intervenor-respondent Bastion have answered; and respondent School District has moved to dismiss the petition for failure to state a claim (Motion #5). The parties and amicus have filed legal memoranda, and the matter is fully submitted.
For the reasons stated below, the Court concludes that the Commissioner's decision sustaining the School Board's resolution to retain the books in the school library is not arbitrary and capricious. And although the Commissioner's decision reflects an over-reading of the precedential value of the Supreme Court's plurality opinion in Board of Ed., Island Trees Union Free School Dist. v Pico (457 US 853 [1982]), this Court does not find that such over-reading so affected the Commissioner's decision as to warrant relief.
Background
At a meeting of the Board of Education of the Clyde-Savannah Central School District in April 2023, petitioner Marchitell challenged the shelving of three books: People Kill People by Ellen Hopkins, It Ends with Us by Colleen Hoover, and All Boys Aren't Blue by George M. Johnson, in the School District's junior and senior high school library. In May 2023, petitioner Marchitell challenged the presence of two other books in the library: Red Hood by Elana K. Arnold and Jesus Land: A Memoir by Julia Scheeres. Bastion, the School District's library media specialist, had selected these books for inclusion in the junior and senior high school library collection; there is no evidence that these books were used in the district's regular curriculum or were required reading. Pursuant to Board Policy No. 8330, petitioner Marchitell submitted his objections in writing to the Board. Petitioner Marchitell sought the removal of these books on the grounds that they contain explicit descriptions of sexual behavior, which he viewed as deviant and criminal sexual behavior, as well as many instances of profanity.[FN2]

Pursuant to the same Board Policy No. 8330, the Board appointed a Library Materials Review Committee to review the five challenged books and submit a written report on each one. The review committee consisted of Bastion, who, as the district's library media specialist, was the review committee's only mandatory member; the director of curriculum, instruction, and educational services; the high school principal; the junior high school principal; the chair of the English department; and a "process consultant." The review committee members read the books and issued a report which, for each book, surveyed published book reviews, book awards, and booklist ratings, and noted the book's availability at "other school libraries in the region." The members also assessed each book in consideration of SED's School Library Program Rubric and the School District's written policies. In their report, they described themes the books addressed, among them diverse relationships, gender identity, racial discrimination and prejudice, domestic violence, bullying, religion and culture, and social awareness. The review committee unanimously recommended that each of the challenged books be retained in the library and designated each as appropriate for inclusion in the Young Adult or Adult sections.
Notwithstanding the review committee's recommendations, the School Board at its meeting on August 9, 2023, initially voted 4 to 3 to remove the five challenged books from the library. But at its meeting on September 13, 2023, after receiving legal advice from counsel and "upon further consideration," the School Board voted 6 to 2 to rescind its earlier decision and to retain the five challenged books in the library. Noting that the library review committee had complied with the procedures and standards set forth in Board Policy No. 8330, the Board found no basis to disturb the committee's consensus to retain the challenged books in the library. The Board resolved to accept the review committee's recommendation that three of the books, All Boys Aren't Blue, Red Hood, and People Kill People, be shelved and marked as appropriate for Young Adults; and that two of the books, It Ends with Us and Jesus Land, be shelved and marked as appropriate for Adults.
Petitioner Marchitell and Moms for Liberty of Wayne County then filed an appeal from [*2]the September 13, 2023 Board decision to the Commissioner of Education, pursuant to Education Law § 310. Following the parties' submissions and the filing of the New York State United Teachers Union's and the New York Library Association's amici curiae briefs, the Commissioner sustained the Board's decision and dismissed petitioners' appeal. In her April 25, 2024 decision, the Commissioner characterized the petitioners' arguments: petitioners asserted that "the books are per se inappropriate as they are 'pornographic,' 'serve[] no educational purpose,' and are 'potentially illegal obscenity'"; and they argued that the Board ''fail[ed] to apply proper pedagogical and ethical standards and relied on a mischaracterization of the First Amendment" (NYSCEF Doc No. 1 at 156).
The Commissioner rejected petitioners' claims. The Commissioner recited the basic principle that a local board of education has "broad authority" to prescribe the course of study in the schools of the district, including the selection of library materials, but that such authority must be exercised within "fundamental constitutional safeguards" (NYSCEF Doc No. 1 at 158 [internal quotation marks and citation omitted]). As to the nature of the constitutional safeguards at issue, the Commissioner quoted Pico for the proposition that "[L]ocal school boards may not remove books from school library shelves simply because they dislike the ideas contained therein . . ." (id., quoting Pico, 457 US at 872)
The Commissioner disposed of petitioners' first argument that the Board's determination was unlawful because the books contain obscenities and vulgarities that are per se inappropriate. The Commissioner acknowledged that "each of the challenged books contain some vivid and detailed accounts of sexual interactions" (NYSCEF Doc No. 1 at 159). Rejecting petitioners' characterization of them as obscene, the Commissioner found that petitioners "failed to demonstrate that the challenged books here lack literary, artistic, political, or scientific value" (id. [internal quotation marks omitted]). The Commissioner observed that the Board's determination was supported by the review committee's analysis of the educational, literary, and artistic values of each book, performed in accordance with Board policy, which it "further consider[ed]" at the September meeting (id. at 160 [internal quotation marks omitted]).
The Commissioner next rejected petitioners' reliance on certain studies suggesting that early exposure to sexual content can be harmful to children, writing, "[n]o academic study, in any event, could abrogate students' 'right to receive information and ideas' through school library materials" (NYSCEF Doc No. 1 at 162, quoting Pico, 457 US at 872). And the Commissioner acknowledged that school librarians must be committed to freedom of speech and dissemination of diverse viewpoints, and "enjoy academic freedom to the same extent as classroom teachers" (id. [citations omitted]). Finally, the Commissioner expressed concern that, in addition to objecting to sexually explicit passages, petitioners appeared to have objected to passages because they discussed "sexual deviancy" and race-related issues. Once again citing Pico, the Commissioner concluded that "'boards of education lack authority, under the First Amendment, to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion'" (id., quoting Pico 457 US at 854)
Petitioners commenced the present CPLR article 78 proceeding to challenge SED's determination as arbitrary, an abuse of discretion, and based on a misapplication of the First Amendment, and to enjoin respondents from shelving the challenged books. On August 26, 2024, petitioners filed their petition in Supreme Court, Wayne County, challenging the School Board's decision to retain the five challenged books and the Commissioner's dismissal of petitioners' administrative appeal. On or about September 13, 2024, the proceeding was [*3]subsequently transferred, on consent, to this Court. On March 17, 2025, this Court granted Bastion's motion to intervene as a respondent in this matter.
The Standing and Capacity of Moms for Liberty of Wayne County to
Bring this CPLR Article 78 Proceeding
As a preliminary matter, respondent SED asserts that petitioner Moms for Liberty of Wayne County lacks standing or capacity to bring this article 78 proceeding. Moms for Liberty of Wayne County, along with petitioner Marchitell, filed the Education Law § 310 petition to appeal the Board's decision to the Commissioner. In the administrative proceeding, respondent School District moved for dismissal for lack of standing. Having found that Marchitell had standing as a district resident and taxpayer to challenge the denial of his objections, the Commissioner declined to dismiss the § 310 appeal, and did not address the standing or capacity of Moms for Liberty of Wayne County to bring a § 310 appeal. While there appears to be some authority in past Commissioner's decisions for the proposition that associations lack standing to bring § 310 appeals, this Court need not, and does not, decide the issue. Petitioner Marchitell undisputedly has standing and capacity to bring this article 78 proceeding, and further, the named petitioners have common counsel, so the Court will proceed to the merits. 
The Commissioner's Decision Is Not Arbitrary and Capricious
This Court's review of the Commissioner's decision, which was made without an administrative hearing, is limited to whether her determination "was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]). An agency's determination is "arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of LL 410 E. 78th St. LLC v. Division of Hous. & Community Renewal, — NY3d &mdash, &mdash, 2025 NY Slip Op 01672, *1 [2025]; see Matter of C.K. v Tahoe, 211 AD3d 1, 11 [3d Dept 2022]). "If the determination has a rational basis, it will be sustained, even if a different result would not be unreasonable" (Matter of LL 410 E. 78th St. LLC, 2025 NY Slip Op 01672, *1 [internal quotations omitted]). When a determination is supported by a rational basis, it must be sustained "even if the reviewing court would have reached a different result" (Matter of P.M.S. Assets v Zoning Bd. of Appeals of Vil. of Pleasantville, 98 NY2d 683, 685 [2002]). And generally, where the judgment of an agency involves factual evaluations in the area of that agency's expertise and is supported by the record, such judgment is entitled to judicial deference (see Matter of Davis v Mills, 98 NY2d 120, 125 [2002] [the courts "tread[] gently in second-guessing the experience and expertise of state agencies charged with administering statutes and regulations"]; accord Matter of Board of Educ. of the Minisink Val. Cent. Sch. Dist. v Elia, 170 AD3d 1472, 1473 [3d Dept 2019], lv denied 33 NY3d 911 [2019]).
Further, the courts must be mindful that the "Commissioner of Education and local officials are vested with wide discretion in the management of school affairs" (Ware v Valley Stream High School Dist., 75 NY2d 114, 122 [1989]; see Matter of Board of Educ., Commack Union Free School Dist. v Ambach, 70 NY2d 501, 510-511 [1987], cert denied sub nom. Margolin v Board of Education, Commack Union Free School District, 485 US 1034 [1988]). "Deference to the education decisions of State and local officials  particularly in matters of curriculum—embodies several important concerns, including preservation of local democratic control over educational policy; protection of teachers' academic freedom; maintenance of [*4]policies that comport with the views of educational experts; and formulation of curriculum so as to transmit community values and foster the free exchange of ideas" (Ware, 75 NY2d at 122 [citations omitted]). While all such concerns are implicated here, the "discretion of the school authorities, however broad, plainly must be 'exercised in a manner that comports with the transcendent imperatives of the First Amendment'" (id. at 122-123, quoting Pico, 457 US at 864).
Here, the Commissioner's decision sustaining the School Board's determination is not arbitrary or capricious or lacking a rational basis. As the Commissioner found, the Board followed the procedures set forth in Board Policy No. 8330. The Board referred the matter to a duly constituted review committee, which consisted of Bastion, as the district's library media specialist; the district's director of curriculum, instruction, and educational services; the high school principal; the junior high school principal; the chair of the English department; and a process consultant. The review committee's report demonstrates that the members read the books, surveyed published book reviews, book awards, and booklist ratings, and noted their availability at other school libraries in the region. The members assessed each book in consideration of SED's School Library Program Rubric and the School District's written policies. And the report identifies the various themes addressed in each book, among them diverse relationships, gender identity, racial discrimination and prejudice, domestic violence, bullying, religion and culture, and social awareness. Considering all these factors, and exercising their pedagogical expertise as librarian, teacher, or school administrator (see Matter of Malverne Union Free School Dist. v Sobol, 181 AD2d 371, 376-377 [3d Dept 1992], appeal discontinued and withdrawn 80 NY2d 972 [1992]), the review committee members unanimously recommended that the challenged books be retained in the library. And the committee identified each as appropriate for Young Adult or Adult readers.[FN3]
In view of both the decision-making process and the substance of the committee's report, the Court would be hard-pressed to find that the Commissioner acted arbitrarily and capriciously when it sustained the School Board's resolution to accept the review committee's unanimous recommendation to retain the books on the library shelves.
Moreover, the Court finds no basis to substitute its judgment for that of the Commissioner, the School Board, and the library review committee and hold that the challenged books are obscene, unlawful, or per se inappropriate. It is true that these books contain many sexually explicit passages that may be shocking to some readers. But after reading each book in its entirety, the members of the review committee concluded that each has "literary, artistic, political or scientific value," a conclusion with which the School Board, and ultimately the Commissioner, concurred. Such finding defeats any argument that the books or the passages in them are "obscene" in the constitutional or legal sense of that word (see Miller v California, 413 US 15, 24, 26 [1973]; Jacobellis v Ohio, 378 US 184, 191 [1964]; see People v P. J. Video, Inc., [*5]68 NY2d 296, 308 [1986] ["an offensive, explicit depiction of sexual conduct, standing alone, is not obscene" in New York] [citation omitted]).
The Court also acknowledges petitioners' point that even if the objectionable passages contained in these books do not constitute "obscenity," they may be regarded as inappropriate for junior and high school aged children. School officials have the authority—and arguably the duty— to select curricular and library materials based on considerations of educational suitability and transmitting community values (see Ware,75 NY2d at 122 [citations omitted]). So, for example, school officials may permissibly remove books, or to refuse to shelve books, that are pervasively vulgar (see Bethel School Dist. v Fraser, 478 US 675, 684 ["(I)n addressing the question whether the First Amendment places any limit on the authority of public schools to remove books from a public high school library, all Members of the [Pico] Court, otherwise sharply divided, acknowledged that the school board has the authority to remove books that are vulgar."]; see also Reno v ACLU, 521 US 844, 869-870 [1997] [acknowledging compelling interest in "shielding" children from exposure to "indecent" material even if "not obscene by adult standards").[FN4]

While the School Board and the Commissioner could have determined that these books should be removed due to pervasive vulgarity, or because the books are educationally unsuitable for inclusion in a junior and senior high school library, the School Board reached a contrary conclusion. The Court declines to substitute its judgment for that of educational officials as to the suitability of these library materials where it is they who are charged with implementing local democratic control over educational policy and exercising their expertise in weighing the academic freedom of education professionals in formulating curriculum both to transmit community values and foster the free exchange of ideas (see Ware,75 NY2d at 122). It is particularly important to the Court that we are addressing the suitability of library books, not required reading pursuant to curriculum. Libraries, even school libraries (perhaps, especially, school libraries), provide opportunities for students' exploration and free inquiry into ideas about the nature of humanity, themselves, and a world of diverse ideas. The Court does not find it unreasonable that respondents determined that these books should be retained in the school library for students to voluntarily access them.[FN5]

Petitioners' Argument that the Challenged Decision Is Based on a Misreading of Pico Does Not Warrant Relief
The Commissioner's decision is clearly influenced by her sensitivity to students' First Amendment rights, a sensitivity that his Court shares. But for the specific contours of students' rights, the Commissioner relies on the Supreme Court's decision in Pico, which she cites several times. Petitioners argue that the Commissioner's decision is based on a misunderstanding of that decision. The Court agrees that the Commissioner appears to have over-read Pico's binding precedential value in certain respects. So it will address petitioners' argument in some detail.
As a starting point, the Supreme Court has held that "[n]either students [n]or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate" (Tinker v Des Moines School Dist., 393 US 503, 506 [1969]). The First Amendment rights of students, however, "are not automatically coextensive with the rights of adults in other settings," and "[a] school need not tolerate student speech that is inconsistent with its basic educational mission . . . even though the government could not censor similar speech outside the school" (Hazelwood School Dist. v Kuhlmeier, 484 US 260, 266 [1988] [internal quotation marks and citations omitted]). The Supreme Court has outlined four specific categories of student speech that schools may regulate: (1) "indecent," "lewd," or "vulgar" speech uttered during a school assembly on school grounds (Fraser, 478 US at 685); (2) speech, uttered during a class trip, that promotes "illegal drug use" (Morse v. Frederick, 551 US 393, 410 [2007]); (3) speech that others may reasonably perceive as "bear[ing] the imprimatur of the school," such as that appearing in a school-sponsored newspaper (Kuhlmeier, 484 US at 271); and [4] speech that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others" (Tinker, 393 U S at 513). More recently, the Supreme Court reaffirmed these principles, but it held that the "leeway" afforded public school officials "is diminished" when they try to regulate students' off-campus vulgar, harsh, or critical speech (Mahanoy Area Sch. Dist. v B.L., 594 US 180, 190 [2023]).
In Pico, the Supreme Court addressed these constitutional principles in the context of a challenge by students to the local school board's removal of certain controversial books from the junior and senior high school library. The Commissioner repeatedly cited Pico's plurality opinion. But that opinion did not command a majority. While Pico's plurality opinion may have persuasive value, the Commissioner was wrong to give it binding precedential value in certain respects.
Justice Brennan authored the plurality opinion in Pico. It was joined by only two other members of the Court, Justices Marshall and Stevens. The three Justices acknowledged that "local school boards have broad discretion in the management of school affairs" and were "in full agreement" that "local school boards must be permitted to establish and apply their curriculum in such a way as to transmit community values" and "in promoting respect for authority and traditional values be they social, moral, or political" (Pico, 457 US at 863, 864). However, the plurality asserted, "the discretion of . . . local school boards in matters of education must be exercised in a manner that comports with the transcendent imperatives of the First Amendment (id. at 864). The parties do not seriously controvert these principles, and the other six other members of the Court did not disagree with the plurality's basic premises. The Commissioner's reliance in her decision on the language of Pico's plurality opinion reciting these [*6]principles is not problematic.
But the Commissioner cited Pico for more than those basic principles. Specifically, the plurality went on to express their view, not shared by a majority of the Justices, that "local boards may not remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion," because to do so would violate students' First Amendment "right to receive information" (Pico, 457 US at 867, 872 [internal quotation marks and citation omitted]). Recognizing that a local board could have had legitimate grounds for book removal, for example "pervasive[] vulgar[ity]" or "educational suitability," the three Justices voted to remand the case for further proceedings on the issue of motivation (id. at 871; see id. at 875).
Justice Blackmun substantially concurred, concluding, "school officials may not remove books for the purpose of restricting access to the political ideas or social perspectives discussed in them, when that action is motivated simply by the officials' disapproval of the ideas involved" (id. at 879-880 [Blackmun, J., concurring in judgment for remand]). He also agreed with the three-member plurality that school officials may have other, non-violative reasons to exclude or retain books in the library, and that the case should be remanded for further proceedings on the issue of motivation (see id. at 880-882).
But four members of the Court dissented. In an opinion written by Chief Justice Burger, the dissenters were of the view that that the First Amendment places no limits on the school board's power to remove books from school libraries (see Pico, 457 US at 885, 887-889 [Burger, CJ., dissenting, joined by Powell, J., Rehnquist, J., and O'Connor, J.]). The dissenters thought the plurality decision was both unworkable and unwise. They reasoned that through the interaction of parents, school boards, and education officials, local control of education involves "democracy in a microcosm"; and that the locus of decision-making on these issues lies there, not with the courts (id. at 891).
Justice White provided the fifth vote for the judgment to remand. But he declined to opine on the First Amendment issues analyzed by the plurality, concluding that it was appropriate to defer judgment on the constitutional questions until a proper record could be made upon remand(Pico, 457 US at 883-884 [White. J., concurring]). Thus, the Supreme Court divided four-to-four on the constitutional issue whether students' First Amendment rights may be violated when books are removed from a school's library shelves for ideological or political reasons. For this reason, the plurality opinion in Pico is of limited precedential value on this specific issue. And, as a result, the state of the law regarding the appropriate First Amendment analysis in library book removal cases is unsettled.
Federal court decisions confirm that the plurality decision in Pico is non-binding authority. In Fraser, the Supreme Court itself expressly recognized that the Pico plurality opinion was just that—a plurality opinion—on certain issues (478 US at 684, citing Pico, 457 US at 871-872 [plurality opinion], id., at 879-881 [Blackman, J., concurring in part and in judgment]; id., at 918-920 [Rehnquist, J., dissenting]). More recent federal decisions illustrate how the courts continue to wrestle with the precedential value of Pico's plurality opinion regarding First Amendment limitations on removing books from the school libraries (see, e.g. Griswold v Driscoll, 616 F3d 53, 57 [1st Cir 2010] [Souter, AJ] [explaining that a "fragmented majority" favored remand, but acknowledging that, as a plurality decision, the rule of decision "remains unclear"], cert denied 562 US 1179 [2011]; ACLU of Fla., Inc. v Miami-Dade County [*7]School Bd., 557 F3d 1177, 1199-1200 [11th Cir 2009] [Pico plurality opinion "is of no precedential value as to the application of the First Amendment to . . . issues" in library book removal case]; Campbell v St. Tammany Parish School Bd., 64 F3d 184, 189 [5th Cir 1995] [even though Pico's "plurality opinion does not constitute binding precedent, it may properly serve as guidance" in library book removal cases]; C.K. v Wentzville R-IV School Dist., 619 F Supp 3d 906, 913-915 [ED Missouri 2022] [Pico lacks binding precedential value in library book removal case]); cf. Arce v. Douglas, 793 F3d 968, 983 [9th Cir 2015] [Pico plurality opinion cited with approval in the context of a First Amendment challenge to legislation eliminating a Mexican American Studies program in an Arizona high school]).
The New York courts, too, have limited their reliance on Pico for the general proposition that school authorities have wide discretion in the management of school affairs, but must exercise it "'in a manner that comports with the transcendent imperatives of the First Amendment'" (Ware, 75 NY2d at 122, quoting Pico, 457 US at 864; see generally id. [relying on Pico in allowing Free Exercise challenge to Commissioner's regulations mandating AIDS instruction for primary and secondary school students to proceed]; see Matter of Bernstein [Norwich City Sch. Dist. Bd. of Educ.], 282 AD2d 70, 74 [3d Dept 2001] [citing Pico in upholding disciplinary determination where teacher had been warned about age-appropriate sexual content of materials], lv dismissed 96 NY2d 937 [2001]; Matter of Malverne Union Free School Dist. v Sobol, 181 AD2d 371, 375 [3d Dept 1992] [upholding Commissioner's decision finding that the board unreasonably intruded on teacher's academic freedom, though not reaching First Amendment issue], appeal discontinued and withdrawn 80 NY2d 972 [1992]; Matter of O'Connor v Sobol, 173 AD2d 74, 78, 79 [3d Dept 1991] [citing Pico and rejecting teacher's First Amendment claim arising from school official's written directive to provide prior notice of dissemination of curricular material likely to be considered controversial following teacher's distribution of sexually explicit article prior to classroom debate on censorship in school libraries], appeal dismissed 80 NY2d 897 [1992]).
The question becomes whether the Commissioner's reliance on the non-binding portion of Pico's plurality decision warrants vacatur and remand. The Court finds the Commissioner's citation to Pico's plurality decision to be potentially problematic in two places in her decision. First, when rejecting petitioners' reliance on studies suggesting that early exposure to sexual content can be harmful to children, she opined, "[n]o academic study, in any event, could abrogate students' 'right to receive information and ideas through library materials'" (NYSCEF Doc No. 1 at 162, quoting Pico, 457 US at 872). Second, when addressing her concern that petitioners' real objections were political or ideological, the Commissioner again cited Pico for the conclusion that "boards of education lack authority, under the First Amendment, to 'prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion'" (id., quoting Pico, 457 US at 854). These statements do not accurately reflect binding Supreme Court jurisprudence.
After careful consideration, the Court concludes that while the Commissioner's discussion of Pico reflects an over-reading of the precedential value of the Supreme Court's decision, such discussion was surplusage. The operative portions of the Commissioner's decision were: (1) giving deference to the School Board and finding that it followed proper procedures and relied on the unanimous recommendations of the library materials review committee, the determination to retain the books in the library was not arbitrary and capricious; and (2) the books and passages petitioners' viewed as objectionable are not as a matter of law obscene or [*8]otherwise inappropriate. And here, the Commissioner's reliance on non-precedential language in Pico's plurality opinion was to address a perception that petitioners' purpose for objecting to the books was for ideological or political reasons, although it does not appear to the Court on this record that they were the predominant reasons for the objections. In any event, the Commissioner sustained the School Board's decision to retain the challenged books on the library shelves, not the constitutionality of a decision to remove library materials. Thus, the Court does not find that relief is warranted on the ground that the Commissioner's decision was "affected by error of law" (CPLR § 7803[3]).
Finally, the Court will briefly address petitioners' argument that relief is warranted because the School Board's decision was the result of a misunderstanding of law. First, it is important to remember that the Court is directly reviewing the decision of the Commissioner, and only indirectly the determination of the School Board. The Court acknowledges that the Board initially voted to remove the books in August 2023, then rescinded that determination at its September 2023 meeting after going into executive session and apparently having discussions with counsel. The Court has also reviewed the video of the School Board's September 2023 meeting at the link provided in the petition. Notwithstanding the references of one or two board members to legal advice they received, which references were themselves ambiguous, the vote at the September meeting to retain the books was by a margin of six to two. And the resolution on its face expressly recites that the Board reached its determination "after further consideration of the Committee's written report," as well as "the basis for the prior vote and upon advice of legal counsel," and that it concluded that there was "no basis to disturb the Committee's consensus." This Court, like the Commissioner, finds an insufficient basis for granting relief on the ground that the School Board's September 13, 2023 determination was infected with legal error.
Conclusion
The Commissioner's determination sustaining the School Board's resolution to retain the books in the junior/senior high library is not arbitrary and capricious or contrary to law. It is within the realm of pedagogical staff, local school boards, and ultimately the Commissioner of Education, to evaluate the suitability of school library collections which foster students' ability to supplement curriculum and explore a world of different ideas and cultures. Procedures are in place to allow discussion and weighing of the various concerns at play in determining suitability of library materials. Where these procedures were followed, and absent transgression of constitutional boundaries, the Court declines to disturb the determination petitioners challenge in this matter.
Based on the foregoing, it is hereby
ORDERED and ADJUDGED that the relief requested in the petition is in all respects DENIED, and the proceeding is DISMISSED.
This constitutes the Decision, Order, and Judgment of the Court, the original of which is being uploaded to NYSCEF for electronic entry by the Albany County Clerk. Upon such entry, counsel for respondent Commissioner shall promptly serve notice of entry on all other parties entitled to such notice.
Dated: April 18, 2025
Albany, New York
Hon. Denise A. Hartman, AJSC
Papers Considered
NYSCEF Doc Nos. 1-15, 38-65, 74, 100-111

Footnotes

Footnote 1:Petitioner Moms for Liberty of Wayne County originally styled itself as Moms for liberty, Inc. of Wayne County. By so-ordered stipulation dated April 9, 2025, the petition was amended to correctly identify petitioner as Moms for Liberty of Wayne County, an unincorporated association. The caption has been amended accordingly.

Footnote 2:Commendably, the parties do not characterize petitioners' pursuit as seeking a "book ban." Petitioner seeks the "removal" of certain books from the junior/senior high school library shelves, and the Board resolved to "retain" them there. Such rhetoric would in any event be unhelpful (see ACLU of Fla., Inc. v Miami-Dade County School Bd., 557 F3d 1177, 1218 [11th Cir 2009]; C.K.-W v Wentzville R-IV School Dist., 619 F Supp 3d 906, 909 [ED Missouri 2022]).

Footnote 3:The Court acknowledges that teachers and librarians also may have First Amendment interests at play here (see Tinker v Des Moines School Dist., 393 US 503, 506 [1969] ["(N)either students nor teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate(.)"]). However, those rights are not without constraint when interwoven with government speech (see Kennedy v Bremerton School Dist., 597 US 507, 527 [2022] [applying Pickering- Garcetti analysis]).

Footnote 4:Cf. United States v American Library Assn, 539 US 194, 199 [2003] [upholding federal law requiring public libraries that receive funding to restrict internet access to obscene images, child pornography, and materials that may be harmful to minors]; National Endowment for the Arts v Finley, 524 US 569, 572-573 [1998] [upholding federal law requiring consideration of general standards of decency and respect for diverse beliefs and values of the American public in distributing funding for the arts].

Footnote 5:The Court notes that the library materials review committee's report indicates that these books generally have been deemed suitable for children ages 14 and over or for children in grades 9 through 12. As petitioners point out, this library is a combined junior and senior high school library, and children as young as 12 may have access. Notably, the record contains no description of the configuration of the library. In any event, nothing in this Court's opinion addresses the ability of library staff to shelve these titles in a manner that reasonably limits accessibility by younger students.